IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR-03-0011-PHX-JAT |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| David Martinez-Ramirez, | ) | |
| Defendant. | ) | |

Pursuant to his standing order of referral, dated June 21, 2012, the Honorable James A. Teilborg, Senior United States District Judge, referred the Petition to Revoke Supervised Release to the undersigned Magistrate Judge to "[m]ake appropriate findings and recommendations and submit the necessary Report and Recommendation[.]"[1] Pursuant to 18 U.S.C. § 3401(i) and 28 U.S.C. § 636(b)(3), the parties expressly consented in writing that this Magistrate Judge conduct the revocation hearing on this Petition. (Doc. 124) *See United States v. Colacurcio*, 84 F.3d 326, 332 (9th Cir. 1996).

Pursuant to Rule 32.1(b)(2), Federal Rules of Criminal Procedure ("Fed.R.Crim.P."), a revocation hearing was held on November 12, 2013 in open court. Defendant David Martinez-Ramirez was initially physically present, but later physically removed from the courtroom due to his disruptive behavior, as further explained herein, and represented by his

---

[1] Pursuant to 18 U.S.C. § 3401(i), "[a] district judge may designate a magistrate judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the judge proposed findings of fact and recommendations for such modification, revocation, or termination by the judge[.]"

counsel of record, Jerry M. Hernandez. The Government, represented by AUSA Keith E. Vercauteren, presented four witnesses, *viz.*, City of Glendale Police Officers Matthew Moody, Wade Kamman, and Joel Queenan, and United States Probation Officer Scott Talbott, and introduced numerous photographs as exhibits in evidence. The Court finds that the Government has established by a preponderance of credible evidence that, on July 30, 2012, Defendant violated Standard Condition No. 1 of his supervised release by committing the State crimes of Disorderly Conduct and Criminal Damage, both Grade C violations.

**I. Revocation of Supervised Release**

The standard of proof for revocation of supervised release is governed by statute. Title 18 U.S.C. § 3583(e)(3) provides, in relevant part, that a district court may revoke a term of supervised release "[i]f the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release[.]" *See also United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008) (citing, *inter alia*, 18 U.S.C. § 3583(e)(3)); *United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation.). "On a challenge to the sufficiency of evidence supporting a supervised release revocation, the Ninth Circuit asks "whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of a violation by a preponderance of the evidence." *United States v. Haile*, __ Fed.Appx. __, 2013 WL 2577403, at *1 (9th Cir. June 11, 2013) (quoting *United States v. King*, 608 F.3d 1122, 1129 (9th Cir. 2010) (internal quotation marks omitted); *United States v. Jeremiah*, 493 F.3d 1042, 1045 (9th Cir. 2007)).

The Ninth Circuit has noted that "[p]arole, probation, and supervised release revocation hearings are constitutionally indistinguishable and are analyzed in the same manner." *United States v. Hall*, 419 F.3d 980, 987 n. 4 (9th Cir. 2005) (citing *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999) (noting that the Supreme Court and the Federal Rules of Criminal Procedure have extended the same minimum due process rights

to all three types of revocation proceedings)). Although preponderance of the evidence is a "[l]ower standard than the 'beyond a reasonable doubt' standard required for a criminal conviction, there must still be credible evidence the releasee actually violated the terms of supervised release." *Perez*, 526 F.3d at 547; *see also United States v. Hankerson*, 208 Fed. Appx. 810, at *1 (11th Cir. 2006) ("Preponderance of the evidence is not a high standard of proof. It is not, however, a toothless standard either.") (internal quotation marks and citation omitted); *see also United States v. Hilger*, 728 F.3d 947, 949-51 (9th Cir. 2013) (explaining why the Government's burden of proof is lower for revocation than a criminal trial).

Revocation proceedings are intended "to be 'flexible,' reflecting their difference from a criminal prosecution" and less formal in which the rules of evidence, including those pertaining to hearsay, need not be strictly applied. *Id.*, at 950 (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)); *United States v. Francis*, 2012 WL 3289833, at *1 (D. Ariz. Aug. 13, 2012) (citing Fed.R.Evid. 1101(d)(3); *United States v. Walker*, 117 F.3d 417, 421 (9th Cir. 1997); *United States v. Doswell*, 670 F.3d 526, 530 (4th Cir. 2012)). Nevertheless, the "[a]dmission of hearsay evidence in revocation of supervised release proceedings is governed by the Fifth Amendment right to due process." *Perez*, 526 F.3d at 548 (citing *Hall*, 419 F.3d at 985 & n. 4)). "A releasee is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witnesses." *Id.* (quoting *Hall*, 419 F.3d at 986) (internal quotation marks omitted); *see also* Fed.R.Crim.P. 32.1(b)(2)(C) (a releasee is entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear"). In *Perez*, the Ninth Circuit reversed the District Court of Hawaii's finding of a supervised release violation based solely on a positive drug test where the only evidence of the violation was an undisputed diluted urine sample, the Government failed to call the Virginia technician to testify and be cross-examined to determine the reliability of urine test results, and the Government "[f]ailed to use an available substitute for the [technician's] live testimony, such as affidavits, depositions, and documentary evidence.") (citation and internal quotation marks omitted). *Perez*, 526 F.3d at

1  549.

2  **II. Findings of Fact**

3  On August 15, 2012, a Petition to Revoke Supervised Release was filed, alleging

4  Defendant violated two conditions of his supervised release. (Doc. 107)  Specifically, the

5  Petition asserts multiple violations of Standard Condition No. 1: "You shall not commit

6  another federal, state or local crime during the term of supervision[,]" by committing the

7  following Arizona crimes during the current term of his supervision: 1) Disorderly conduct

8  on July 26 and July 30, 2012, in violation of Arizona Revised Statute ("A.R.S.") § 13-2904,[2]

9  each a Grade C violation; 2) Criminal Damage, in violation of A.R.S. § 13-1602, a Grade

10  C violation if the crime committed is a misdemeanor;[3] 3) Aggravated Assault, in violation

11  of A.R.S. § 13-1204,[4] a Grade A[5] violation; and 4) Possession of Stolen Property, in

---

13  [2] Arizona's disorderly conduct statute provides, in pertinent part, that "[a] person
14  commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood,
   family or person, or with knowledge of doing so, such person: 1. Engages in fighting, violent
15  or seriously disruptive behavior; or 2. Makes unreasonable noise; or 3. Uses abusive or
16  offensive language or gestures to any person present in a manner likely to provoke
   immediate physical retaliation by such person; or . . . 6. Recklessly handles, displays or
17  discharges a deadly weapon or dangerous instrument." A.R.S. § 13-2904(A). "Disorderly
18  conduct under subsection A, paragraph 1, 2, 3, 4 or 5 is a class 1 misdemeanor."A.R.S. § 13-
   2904(B). A violation of A.R.S. § 13-2904(A)(6) "is a class 6 felony." *Id.*

19
20  [3] Under Arizona law, criminal damage to property of two hundred fifty dollars or less
   "[i]s a class 2 misdemeanor."A.R.S. § 13-1602(B)(6).  A person commits criminal damage
21  by "[r]ecklessly defacing or damaging property of another person[.]" A.R.S. § 13-
   1602(A)(1); *see also State v. Padilla*, 2012 WL 3711302 (Az.Ct.App. Aug. 28, 2012).

22
23  [4] Under A.R.S. §13-1204(A), a person commits Aggravated Assault "if the person
24  commits assault as prescribed by § 13-1203 under any of the following circumstances: 1. If
   the person causes serious physical injury to another[;] 2. If the person uses a deadly weapon
25  or dangerous instrument[;] 3. If the person commits the assault by any means of force that
26  causes temporary but substantial disfigurement, temporary but substantial loss or impairment
   of any body organ or part or a fracture of any body part[;] 4. If the person commits the
27  assault while the victim is bound or otherwise physically restrained or while the victim's
28  capacity to resist is substantially impaired[;] 5. If the person commits the assault after
   entering the private home of another with the intent to commit the assault[;] 6. If the person

violation of A.R.S. § 13-1802, a Grade C violation if the crime committed is a misdemeanor.[6] (*Id.*[7]) When it was initially filed, the Petition also alleged Defendant violated Standard Condition No. 3 by failing to participate in mental health counseling as directed. (*Id.* at 2) On October 4, 2013, Magistrate Judge Michelle H. Burns concluded after conducting a preliminary revocation hearing that the Government failed to establish "probable cause as to Allegation B in the Petition to Revoke Supervised Release and order[ed] Allegation B dismissed." (Doc. 117)

According to the Petition, on November 4, 2003, Defendant was convicted of the crime of Conspiracy to Possess with Intent to Distribute 500 grams or more of Methamphetamine, a Class A felony, and committed to the Bureau of Prisons for 57 months, followed by 60 months of supervised release. (Doc. 107 at 1) The docket reflects Defendant's term of supervised release was revoked on December 9, 2008, and he was sentenced to time served, and placed on supervised release for a term of 51 months. (Doc.

-------------------

is eighteen years of age or older and commits the assault on a minor under fifteen years of age[;] 7. If the person commits assault as prescribed by § 13-1203, subsection A, paragraph 1 or 3 and the person is in violation of an order of protection issued against the person pursuant to § 13-3602 or 13-3624."

[5] This Magistrate Judge disagrees with USPO Scott Talbot, who testified at the hearing that the crime of Aggravated Assault is a Grade B violation. Because this crime is a "crime of violence," it is a Grade A violation. *See* U.S.S.G. § 7B1.1 ("Grade A Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence[.]").

[6] The Arizona crime of Possession of Stolen Property occurs when a person "[c]ontrols property of another knowing or having reason to know that the property was stolen." A.R.S. § 13-1802(A)(5). Possession of Stolen Property "with a value of one thousand dollars or more but less than two thousand dollars is a class 6 felony. [If] valued at less than one thousand dollars[, it] is a class 1 misdemeanor, unless the property is taken from the person of another, is a firearm or is an animal taken for the purpose of animal fighting[.]" A.R.S. § 13-1802(G).

[7] This is Defendant's third Petition that alleges he violated his supervised release since Defendant was sentenced on November 4, 2003 to 57 months in the Bureau of Prison. (*See* docs. 63, 91, 107)

89) On February 28, 2011, Defendant's term of supervised release was again revoked. He was again sentenced to time served, and placed on a supervised release term of 48 months. (Doc. 104) Defendant's current term of supervised release expires on February 27, 2015. (Doc. 107 at 1)

At the October 16, 2013 admit/deny hearing, Defendant requested a revocation hearing, which was scheduled for October 30, 2013 at 1:30 p.m. (Doc. 117) On October 23, 2013, the Government moved to continue the revocation hearing because "a necessary witness, who is a Glendale Police Department officer, [was] out of the state October 30, 2013 through November 6, 2013. The government promptly notified defense counsel, Mr. Jerry Hernandez, and this Court's staff of the conflict, and inquired about either accelerating or continuing the revocation hearing." (Doc. 121 at 2)  Defense counsel took "no position on the motion itself," but agreed  "with the [G]overnment's request that the entire hearing be conducted on one day only before this Court." (*Id*.) Finding the unavailability of the witness constituted good cause, the Court granted the Government's continuance motion and rescheduled the revocation hearing for November 12, 2013. (Doc. 122)

At the beginning of the November 12, 2013 hearing, the Court gave Defendant a clear warning or "fair notice" that, while he was free to speak quietly with his attorney, there should be no "loud outbursts" because the Court "did not want to exclude [him] from the courtroom."

The first witness, Officer Matthew Moody, testified that, on July 30, 2013, he was dispatched to the Paradise Vista Apartments, Apartment 601, 7102 N. 43rd Ave, Glendale, Arizona, on a call of a "family fight, loud disturbance, and banging noises." He spoke to Ricardo Hernandez, an apartment maintenance employee, who informed Officer Moody that when he heard the loud banging and noises, he looked out an apartment window and saw the Defendant, who he knew as "David Ramirez," leave Apartment 601. Mr. Hernandez then proceeded directly to the apartment complex's front office where he encountered the Defendant, who admitted to Mr. Hernandez that he had kicked in the front door of Apartment 601. He also said he would pay for the damage he caused, and then Defendant

1  left his business card with his name on it with the manager at the front office.[8] Mr.

2  Hernandez informed Officer Moody that the cost to repair Apartment 601's front door would

3  be $200.

4       Officer Moody identified the Government's exhibits 1(a)-1(g), which are photographs

5  Officer Moody took on July 30, 2013, depicting the damage to the front door of Apartment

6  601. Exhibit 1(h) is a photograph Officer Moody took of the text message Defendant sent

7  from his cell phone, (602) 489-8248), to the cell phone of Veronica Martinez, Defendant's

8  putative girlfriend, who showed the text message to Officer Moody. Exhibits 1(a)-1(h) were

9  received in evidence. Exhibit 1(h), the photograph of Defendant's text message, contains an

10  admission against his interest to damaging Apartment 601's front door and reads as follows:

11      Daved [sic]: I told the manager on you...i came over with food for u, and this
    mother fucker don't want to open the door.. i told the manager mellisa i kickd

12      [sic] the door open and that i would pay her and she said it was koo that she
    would have maintance [sic] fix it for me...you got fucking mental problems and

13      im going to press charges against u...first u tell me buy u food and now i come
    home and your [sic] tell this mother fucker don't open the door...i don't know if

14      the mother

15      what the fuck you talking bout. why u going to my hom

16

17  Exh. 1(h).

18       During the Government's direct examination of the second witness, Officer Joel

19  Queenan, defense counsel Jerry Hernandez stood up, interrupted the prosecutor's

20  questioning of Officer Queenan, and advised the Court that the Defendant did not want Mr.

21  Hernandez to represent him anymore. The Court summarily denied the motion as it was not

22  an appropriate time to conduct an *ex-parte* hearing during the middle of the Government's

23  questioning of its second witness. Within a few seconds, Defendant became louder and

24  louder and began using vulgar language everyone in the courtroom could hear. At that time,

25  the Court issued another verbal warning to Defendant to "settle down, Mr. Martinez, this is

26  exactly [the kind of behavior] I was talking about because this hearing will go forward

27   

28      [8] There was no testimony or evidence presented that Defendant paid for the damage
he caused to the front door and door frame.

whether you are here or not." Defendant loudly responded, "It will go forward to the Ninth Circuit with me or not. Exclude me from here. Thank you, sir. I'm ready to go." Defendant then engaged in an escalating diatribe toward the two deputy U.S. Marshals at which time the Court instructed the deputy Marshals to remove the Defendant from the courtroom due to Defendant's loud, vulgar, and disruptive language and behavior, obstructing the orderly administration of the revocation hearing. As they did so, Defendant loudly hurled racial slurs toward the African-American deputy Marshal, yelling the "f" and "n" words and various threats, and ultimately exclaiming, "Fucking niggers, whites rule this fucking world." Defendant was removed from the courtroom for the rest of the hearing.[9]

The third witness, Glendale Police Officer Joel Queenan, testified that, later on July 30, 2013, at about 10:00 p.m., he and another officer were dispatched to Paradise Vista Apartments, 7102 N. 43rd Ave, Glendale, AZ, regarding "some kind of altercation" in front of Apartment 601. Upon Officer Queenan's arrival at the scene, he heard "loud yelling," ran to the area pointed out by other residents, and observed the Defendant in front of Apartment 601, engaging in a verbal altercation with someone inside the apartment. He gave Defendant verbal commands and promptly arrested him. Upon a search incident to Defendant's arrest, the officers discovered a Taser (electronic stun device) on Defendant's person.

After Defendant was placed in a police vehicle, Officer Queenan interviewed Veronica Martinez, who was very upset, crying, and had difficulty breathing. Veronica informed Officer Queenan that, among other things, as a result of the incident with Defendant earlier that day, she obtained an Order of Protection against the Defendant and, while she was obtaining the Order of Protection, Defendant kicked in the front door of her apartment. She told Officer Queenan that earlier in the day after kicking open the front door and entering into her apartment, Defendant stole her Taser from inside the apartment. When the Defendant returned for the second time that same day shortly before the police arrived at the apartment, she pled with him to leave and then opened the door. At this time,

---

[9] On November 22, 2013, the Court conducted an *ex-parte* hearing to determine why Defendant did not want his attorney to represent him anymore.

Defendant tried to reach around the door to grab or strike her as she tried to close the door on him, yelling he was going to kill her, and then "he started sparking the Taser at her." Officer Queenan tested the Taser, which was secured as evidence, and, when it was turned on, he confirmed it was working properly and "made a loud buzzing noise like an electrocution noise."

Later that night after receiving his *Miranda* rights, Defendant admitted to Officer Queenan that Defendant kicked in the apartment door earlier in the day and forced his way into the apartment. While inside Apartment 601 retrieving his personal property, he retrieved the Taser that was the personal property of Veronica Martinez. Later in the interview, Defendant recanted taking the Taser earlier that day and said he took it at a different time and denied trying to assault Veronica Martinez or sparking the Taser at her.

The last witness was Probation Officer Scott Talbott, who identified Defendant as one of Officer Talbott's supervisees and discussed Defendant's prior violations and current terms and conditions of supervised release that Defendant is alleged to have violated. Officer Talbott acknowledged he had communicated with Defendant via Defendant's cell phone in the past and confirmed Defendant's cell phone number was (602) 489-8248, the same number identified on Exhibit 1(h) with the text message discussed earlier herein. Relying on hearsay only, Officer Talbott also testified about Defendant's police contact on July 26, 2013 for a different verbal altercation with Veronica Martinez in which both Defendant and Veronica Martinez were cited for Disorderly Conduct. On August 7, 2013, Officer Talbott spoke with Veronica Martinez, who reported that Defendant had been verbally abusive to her in the past, but he "never put his hands on me[,]" which the Court interprets to mean that Defendant never struck or hit her. *See* Officer Talbott's August 13, 2012 Probation Memorandum, of which the Court takes judicial notice.

## III. Conclusions of Law

Defendant's revocation hearing was conducted within a reasonable time of his September 27, 2013 arrest and this District Court has jurisdiction over Defendant's supervised release. *See* Rule 32.1(b)(2), Fed.R.Crim.P.  All requirements of Rule 32.1(b)(2)

1   have been met.

2       By a preponderance of the evidence presented, the facts demonstrate that, on two

3   separate occasions on July 30, 2012, Defendant, with intent to disturb the peace or quiet of

4   the people in the apartment complex, or with knowledge of doing so, "engage[d] in fighting,

5   violent or seriously disruptive behavior" and "[made] unreasonable noise," committed the

6   Arizona crime of Disorderly Conduct. *See State v. July*, 2008 WL 3892146, at  (Az.Ct.App.

7   May 8, 2008) (disorderly conduct conviction affirmed due to defendant's "[b]anging on the

8   [apartment] door to Sarah's bedroom, yelling 'Let me in.' Larry eventually broke the door

9   and entered the bedroom."). Defendant's requisite mental state was established "by inference

10  from all relevant surrounding circumstances." *See In re William G*., 192 Ariz. 208, 213, 963

11  P.2d 287, 292 (Az.Ct.App. 1997) ("[A]bsent a person's outright admission regarding his

12  state of mind, his mental state must necessarily be ascertained by inference from all relevant

13  surrounding circumstances."); *State v. Noriega*, 187 Ariz. 282, 286, 928 P.2d 706, 710

14  (Az.Ct.App. 1996) ("[A] defendant's mental state will rarely be provable by direct evidence

15  and the jury will usually have to infer it from his behaviors and other circumstances

16  surrounding the event.").

17      The Government also sustained its burden of proof on the allegation that Defendant

18  violated Standard Condition No. 1 by committing the State crime of Criminal Damage.

19  Because the door's damage was less than two hundred fifty dollars, Defendant committed

20  a Class 2 misdemeanor. *See* A.R.S. § 13-1602(B)(6). The evidence establishes that

21  Defendant, who has a violent temper, recklessly damaged the front door and door frame of

22  Apartment 601, property owned by another person or legal entity. *See* A.R.S. § 13-

23  1602(A)(1). Exhibits 1(a) through 1(g) show the damage which Defendant admitted he

24  caused. *See In re Nathan C*., 2012 WL 1072239 (Az.Ct.App. March 29, 2012) (juvenile

25  adjudicated delinquent affirmed as a result of trying to kick open a locked door and

26  damaging the door's lock mechanism). To prove Defendant acted "recklessly" under

27  Arizona law, the Government needed to show, and did show, Defendant "acted in a way he

28  knew would create a substantial and unjustifiable risk of damage to" the apartment's door

and "consciously disregarded that risk, grossly deviating from the standard of conduct a reasonable person in the same situation would observe." *In re Jake V.*, 2009 WL 2710144, at *2 (Az.Ct.App. Aug. 28, 2009) (citing A.R.S. § 13-105(10)(c)); *also see State v. Schnebele*, 2008 WL 4990641, at *1 (Az.Ct.App. Nov. 20, 2008) (affirming defendant's criminal damage conviction for kicking in a locked front door and entering his mother's apartment. "The officers concluded that the door had been forced open after seeing the locks engaged, the door frame damaged, and pieces of wood scattered throughout the entryway and living room.").

Having considered the subject Petition, testimony, exhibits and arguments of counsel, the undersigned Magistrate Judge **finds** as follows:

1) the Government failed to establish by a preponderance of the evidence Defendant violated Standard Condition No. 1 of his supervised release by committing the State crimes of Disorderly Conduct on July 26, 2012, Aggravated Assault[10] on July 30, 2012, and Possession of Stolen Property,[11] in violation of A.R.S. § 13-1802, and

2) the Government established by a preponderance of credible evidence that Defendant violated Standard Condition No. 1 of his supervised release by committing the State crimes of Disorderly Conduct on July 30, 2012, in violation to A.R.S. § 2904, and Criminal Damage, in violation to A.R.S. § 13-1602, both Grade C violations. *See* U.S.S.G. § 7B1.1(a)(3) and (b).

**IV. Recommendation**

---

[10] Other than it "sparked" when activated, no evidence was presented that the characteristics of the subject Taser warranted a finding that this Taser is "a deadly weapon or dangerous instrument" under Arizona law nor was the Glendale Municipal Court's Order of Protection introduced in evidence for the Court to independently determine its terms, conditions, and prohibitions. *See* A.R.S. § 13-1204(A)(2) and (7).

[11] The absence of Veronica Martinez from the hearing to testify and be cross-examined by Defendant and dearth of other reliable, corroborating evidence precluded the Government meeting its burden of proof that Defendant committed this supervised release violation. *See Perez*, 526 F.3d at 548. Moreover, the Government did not show that good cause existed for not producing Veronica Martinez to testify at the hearing. *Id.*

- 11 -

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and LRCrim 57.6(d)(4), Rules of Practice for the District of Arizona, the undersigned Magistrate Judge **RECOMMENDS** that the Honorable James A. Teilborg, Senior United States District Judge, after an independent review of the record, find Defendant violated Standard Condition No. 1 of his supervised release by committing the State crimes of Disorderly Conduct on July 30, 2012, in violation to A.R.S. § 2904, and Criminal Damage, in violation to A.R.S. § 13-1602, and that Defendant's supervised release be revoked. *See* U.S.S.G. § 7B1.3(c).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(b)(1), Federal Rules of Appellate Procedure, should not be filed until after entry of the District Court's judgment.

**IT IS ORDERED** setting a final disposition hearing for **Tuesday, December 17, 2013, at 3:00 p.m.** before the Honorable James A. Teilborg, Senior United States District Judge, in Courtroom 503, Sandra Day O'Connor U.S. Courthouse, 401 West Washington Street, Phoenix, Arizona.

**IT IS FURTHER ORDERED** that the U.S. Probation Department shall prepare a Disposition Report and the Defendant shall cooperate with the Probation Department in its preparation of the Disposition Report.

**IT IS FURTHER ORDERED** that any objection to the revocation proceeding and any request(s) for supplementation of this proceeding must be made by the parties in writing and shall be specific as to the objection(s) or request(s) made. All objections or requests for supplementation shall be filed within fourteen (14) days of the date of service of a copy of these findings unless extended by an order of the assigned District Judge. *See* 28 U.S.C. § 636(b)(1); Rule 59(b)(2), Fed.R.Crim.P. Failure to timely file objections to the undersigned Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the undersigned Magistrate Judge will be considered a waiver of

a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 59, Fed.R.Crim.P.

**IT IS FURTHER ORDERED** that no more than ten (10) character letters shall be submitted by defense counsel, unless otherwise ordered by the assigned District Judge. All character letters Defendant or his attorney would like the assigned District Judge to read and consider before pronouncing disposition (including the translation of any documents from Spanish to English) must be submitted in paper form with the original to the probation office and copies to the assigned District Judge and opposing counsel no later than five (5) business days prior to the disposition date or they may be deemed untimely by the assigned District Judge and not considered by him/her. *See* ECF Manual, II § Q at 29.

**IT IS FURTHER ORDERED** that any motions for upward departure, downward departure and disposition memoranda must be filed, at least, seven (7) business days prior to the disposition date. Responses are due, at least, three (3) business days prior to the disposition date. Any motion to continue the disposition hearing must be filed promptly upon discovery of the cause for a continuance and state the cause with specificity. Motions to continue disposition filed less than fourteen (14) days before disposition are disfavored.

Dated this 22nd day of November, 2013.

Lawrence O. Anderson
United States Magistrate Judge